**In re JOHN MUIR & CO., Debtor.**

**Bankruptcy No. 81 B 11761.**

United States Bankruptcy Court, S.D. New York.

April 15, 1983.

Weil, Gotshal & Manges, New York City, for trustee.

Dechert, Price & Rhoads, Washington, D.C., for Templeton Global Fund.

Stephen P. Harbeck, Washington, D.C., for SIPC.

## MEMORANDUM & ORDER

JOHN J. GALGAY, Bankruptcy Judge.

On August 17, 1981, the Securities Investor Protection Corporation ("SIPC") applied for the liquidation of John Muir & Co. ("Muir") in the United States District Court for the Southern District of New York. The case was removed to this Court, pursuant to section 78eee(b)(4) of the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.*, ("SIPA"). Objection was made by Templeton Global Fund, Inc. ("Templeton") to the Trustee's determination of Templeton's claim and a trial was held on September 16, 1982. Based on that trial, the papers submitted and the applicable law, the Court, for reasons discussed below, affirms the Trustee's determination of Templeton's claim.

### A. Facts

Templeton is a mutual fund with approximately 22,000 shareholders. As a mutual fund, it must make investments through a custodian bank, the Bank of New England and Boston, which will not pay out money without instructions and until the securities are tendered. The transaction which concerns us here was a purchase of Jackson National Life ("Insurance Stock") through Muir, who was the market maker in that stock. The Bank of New England and Boston used Bankers Trust Company ("Bankers Trust") as its New York agent.

Templeton's normal procedure was to place a trade order with a broker and, when the trade was completed, to instruct its custodian bank to pay out in exchange for the securities. In this instance, Templeton placed the order with Muir on August 5, 1981, but failed to inform the custodian bank. On August 12, 1981, a Wednesday, Muir tendered the Insurance Stock to Bankers Trust, who refused to accept the Insurance Stock because there were no instructions from Templeton. This attempted transaction was reported to Templeton, which on Friday, August 14, instructed the banks to accept the shares and make payment. The trade was not closed on Friday. On Monday, August 17, SIPC filed for liquidation of Muir.

SIPA provides "protection for investors if the broker-dealer with whom they are doing business encounters financial troubles." H.R.Rep. No. 1613, 91st Cong., 2d Sess. 1 (1970), U.S.Code Cong. & Admin.News 1970, p. 5254, 5255.[1] After the issuance of a consent decree, a trustee is appointed for the liquidation of the debtor's business, in order to, *inter alia*, "as promptly as possible ... deliver customer name securities ... and ... to distribute customer property and ... otherwise satisfy net equity claims of customers to the extent provided in this section ..." SIPA § 78fff(a).[2]

---

[1] SIPA was enacted in December 1970 in response to a series of broker/dealer insolvencies which had exhausted the New York Stock Exchange Trust fund. Its purpose was "to provide protection for investors if the broker-dealer with whom they are doing business encounters financial troubles." H.R.Rep. No. 1613, 91st Cong., 2d Sess. 1 (1970), U.S.Code Cong. & Admin.News 1970, p. 5255. To achieve this end, Congress, by SIPA, established the Securities Investor Protection Corporation ("SIPC"), a non-profit corporation whose membership consists of all brokers and dealers registered under section 15(b) of the Securities Exchange Act of 1934 and all members of a national securities exchange, with certain exceptions. See SIPA § 78ccc(a)(2)(A.). Section 78ddd sets up a SIPC fund, consisting of assessments of members and lines of credit.

[2] Section 78fff(a) sets forth the purposes of liquidation, stating

(1) as promptly as possible after the appointment of a trustee in such liquidation proceeding, and in accordance with the provisions of this chapter—

(A) to deliver customer name securities to or on behalf of the customers of the debtor entitled thereto as provided in section 78fff–2(c)(2) of this title; and

(B) to distribute customer property and (in advance thereof or concurrently therewith) otherwise satisfy net equity claims of cus-

Notice was sent to Templeton, as required by SIPA section 78fff–2(a)(1), informing it of the proceedings under SIPA and of the necessity of filing a claim. Templeton did file its claim, stating that Muir owed Templeton the Insurance Stock, and that Templeton owed Muir the purchase price of that stock.

## C. *Issue*

The controversy here is over the status of the Insurance Stock ordered by Templeton, but undelivered and unpaid for on the filing date. Templeton argues that it has a right to redeem the shares by payment of the purchase price. The trustee claims that any right of redemption is limited to sixty days after filing, a deadline long past. SIPA § 78*lll*(11)(C). Therefore the trustee argues that Templeton's allowed claim is limited to its net equity as of the filing date.[3]

## D. *Discussion*

■ Templeton bases its argument for redemption on SIPA sections 78fff–2(a)(4) and 78fff–2(b) and on inadequacy of notice. First, regarding its statutory argument, Templeton asserts that section 78fff subsections 2(a)(4) and 2(b), read together create an unlimited right to redeem the Insurance Stock. Templeton misapprehends those provisions. Section 78fff–2(a)(4) concerns the filing of claims, allowing persons to file formal proofs of claims and should more properly be read with section 78fff–2(a)(2). Subsection 2(a)(2) allows customers to establish their claim by filing a statement of claim, but requires certain persons to file formal proofs of claim; section 77fff–2(a)(4) allows persons to file a formal proof of claim for claims that do not require SIPC funds. Subsections 2(a)(2) and 2(a)(4) neither address the payment of funds from the customer to the debtor nor create an unlimited right to redeem stock.

tomers to the extent provided in this section;
. . .
  (4) to liquidate the business of the debtor.

■ Templeton's reliance of section 78fff–2(b) is equally inappropriate. That section states:

> After receipt of a written statement of claim pursuant to subsection (a)(2), of this section, the trustee shall promptly discharge, in accordance with the provisions of this section, all obligations of the debtor to a customer relating to, or net equity claims based upon, securities or cash, by the delivery of such customer.

It is a statement of general application, but, makes no specific direction as to distribution, leaving that to section 78fff–2(c). Customer property as defined in section 78 *lll*(4) includes: "cash and securities (except customer named securities delivered to the customer) at any time received, acquired, or held by or for the account of a debtor from or for the securities accounts of a customer, and the proceeds of any such property transferred by the debtor, including property unlawfully converted." This all-inclusive property is to be distributed according to section 78fff–2(c)(1): first, to SIPC in repayment of advances used to purchase securities which went into customer property and, second, to customers, in payment of their net equity. Payment may be in either cash or securities. SIPA § 78fff–2(b)(2).

Customers may claim securities or money for only two types of claims: (1) net equity or (2) customer-named securities. This is substantiated by the "Purposes" section, 78fff(a)(1), which states that the primary purpose of a liquidation proceeding is to, as quickly as possible, "deliver customer name securities . . . as provided in 78fff–2(c)(2) . . .", SIPA § 78fff(a)(1)(A), and "distribute customer property and . . . otherwise satisfy net equity claims." SIPA § 78fff(a)(1)(B). For each of these claims, there now exists a provision allowing redemption of securities by a customer by paying any amount owed the debtor on those securities.

**3.** The applicable definition of net equity in Templeton's situation is the difference between the appreciated value of the Insurance Stock on the filing date minus the cost as of the purchase date. SIPA § 78*lll*(11).

Redemption of customer name securities is governed by section 78fff–2(c)(2), which allows the customer to redeem by payment at anytime with the approval of the trustee. However, the definition of customer name securities is limited:

The term "customer name securities" means securities which were held for the account of a customer on the filing date by or on behalf of the debtor and which on the filing date were registered in the name of the customer, or were in the process of being so registered pursuant to instructions from the debtor, but does not include securities registered in the name of the customer which, by endorsement or otherwise, were in negotiable form.

SIPA § 78*lll* (3). The Insurance Stock at issue here did not meet the requirements of "customer name securities."

All other claims are for net equity. The definition of net equity, as SIPA was originally enacted, former section 78fff–2(a), made no provision for redemption. Therefore, it was held that there was no right of redemption for a margin customer. *S.E.C. v. Albert & Maguire Sec. Co., Inc.,* 378 F.Supp. 906 (E.D.Pa.1974). This definition was amended in 1978, effective October 1979, and is now in section 78*lll* (11). SIPA now provides for redemption "made with the approval of the trustee and within such period as the trustee may determine (but in no event more than sixty days after the publication of notice...)." SIPA § 78*lll* (11)(C). This time limit allows no discretion. The legislative history is unclear, but this limit appears to be intended to allow some opportunity for redemption by margin customers while preventing such customers from "playing the market" with the debtor bearing all the risk. That is, to prevent customers from waiting for market developments only redeeming if the market price has gone up. Templeton may not have been a deliberately playing the market here, but it remains true that it is acting with hindsight and has had the use of these funds for over a year. Templeton did not redeem the Insurance Stock within the statutory deadline. It cannot redeem after the deadline passed.

Templeton's final argument is that they were unaware of the sixty day limit of section 78*lll* (11)(C). They do not claim that they did not receive the trustee's notice, sent as required under section 78fff–2(a)(1), or that they were unaware that this liquidation was governed by SIPA. Templeton is not an unsophisticated party. They are a mutual fund with assets of many millions of dollars. They were on *actual* notice of the applicable statute. This Court trusts that it is unnecessary to cite volume and page of cases holding parties to knowledge of the contents of public laws and that old rubric— ignorance of the law is no excuse.

*E. Conclusion*

For the reasons stated above and based on the record and papers before the Court, the Court affirms the determination of the trustee that Templeton's claim is limited to its net equity and that it may not, at this late date, redeem stocks ordered but unpaid for on Muir's filing date.

It is so ordered.